UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
MARY BRIANTE,

      Plaintiff,       **MEMORANDUM & ORDER**
                  15-CV-3200 (DRH)(GRB)

 -against-

LONGWOOD CENTRAL SCHOOL DISTRICT,
THE LONGWOOD CENTRAL SCHOOL
DISTRICT BOARD OF EDUCATION, LISA
MATO, Individually and in her Official Capacity,

      Defendants.
-------------------------------------------------------------X

**APPEARANCES:**

**Law Office of Steven A. Morelli, P.C.**
Attorneys for Plaintiff
900 Stewart Avenue, Suite 130
Garden City, New York 11530
By:  Steven A. Morelli, Esq.
   Mindy Kallus, Esq.

**Sokoloff Stern LLP**
Attorneys for Defendants
179 Westbury Avenue
Carle Place, New York 11514
By:  Steven C. Stern, Esq.
   Kaitlyn R. McKenna, Esq.

**HURLEY, Senior District Judge:**

  Plaintiff Mary Briante ("plaintiff" or "Briante") commenced this action asserting she was discriminated against because of her age in violation of 42 U.S.C. § 1983. Presently before the Court is defendants' motion to dismiss. For the reasons set forth below, the motion is granted.

## Background

  The following allegations are taken from the Amended Complaint ("Comp.") (DE 16).

Briante is a 68 year old female teacher. She was employed by defendant Longwood Central School District (the "District") as a substitute from September 1983 until April 1994, at which time she was promoted to "permanent educator;" she received tenure three years later. She worked at the West Island Elementary School until June 2006 when she was transferred to Longwood Middle School at her request. (*Id.* ¶¶ 11-13, 16.) Defendant Lisa Mato ("Mato") is the principal of the Middle School. (*Id.* ¶ 17.)

Initially Briante taught fifth grade Science and Social Studies at the Middle School but in June 2008 requested a reassignment to teach math as she was certified in both elementary education and math. The request was granted and from September 2008 to June 2011 she taught math. As was the District's practice, as a math teacher Briante was partnered with various social studies and science teachers. (*Id.* ¶¶ 19-20.)

In June 2011, Mato proposed plaintiff consider teaching an advanced math course. Briante declined as it would have required her to teach all subject matter areas including social studies and science, subject areas she was less comfortable with than math. (*Id.* ¶¶ 21-22.) "After declining []Mato's offer, many staff members warned [] Briante that doing so would result in dire consequences for her. Nevertheless, for the []2011-2012 academic year [she] remained a Math teacher." (*Id.* ¶¶ 24-25.)

During the 2012-13 school year Briante was assigned to teach social studies despite having expressed to Mato her concerns about her "comfort level with those areas of instruction," while Ms. Mckensey, who is younger than plaintiff, was assigned upon her return from maternity leave to teach math although before her leave she taught social studies and science. (*Id.* ¶¶ 26-29.) Moreover, Briante was assigned a class "notorious for its extreme behavioral issues." (*Id.* ¶¶

2

31-32.) At some point during the 2012-13 school year, Mato confronted Briante about the weight of a student's school bag, placing the blame on Briante and accusing her of "corporal punishment" even though Briante had instructed her students to leave any unnecessary books or supplies at school. The student in question disregarded these instructions. The incident left Briante "emotionally distraught." (*Id.* ¶¶ 35-43.) "As the school year was coming to a close, [] Mato had minimal interactions with [p]laintiff except to ask whether she was retiring at the end of the year." (*Id.* ¶ 44.) In or about April 2013, Mato conducted an observation of Briante's class and issued an unsatisfactory evaluation, Briante's first "low rating." On April 18, 2013, Mato gave Briante a copy of a "negative statement" she was placing in Briante's file challenging her "competency to teach in one of the subject matter areas, just a day before a parent-teacher conference"; she also told Briante "I changed your subject area because you have more parent complaints than any other teacher in the school." (*Id.* ¶¶ 46-50.)

On April 19, 2013 a "parent teacher conference was held" with Briante, Mato, a union representative, and parents Mr. and Mrs. Marquardt present. Mr. Marquardt, "a highly [sic] ranking administrator of a different school district," "outrageously disparaged plaintiff in front of all attendees and engaged in an hour-long verbal attack of plaintiff," culminating in him "false[ly] accus[ing] plaintiff of being a 'bully' and shockingly threaten[ing], 'I will be doing something about it!' " (*Id.* ¶¶ 54-55.) Mato "never intervened nor mediated the one-sided attack against plaintiff" and by failing to stop it was "complicit in Mr. Marquardt's abuse of plaintiff." (*Id.* ¶¶ 56, 60.) "Mr. Marquardt's direct threats incited an overwhelming sense of fear within plaintiff and she could not physically return to her class for the remainder of that day." (*Id.* ¶ 59.)

"As a result of these events, and the intolerable work environment perpetrated by

3

Defendants, plaintiff developed hypertension." (*Id.* ¶61.) On April 27, 2013, plaintiff submitted a doctor's note that she would be unable to return to work until May 10, 2013. On May 10, 2013 the District accepted Briante's early retirement effective June 30, 2013, which early retirement is claimed to have been the result of the hostile work environment. (*Id.* ¶¶ 62-65.)

Briante asserts that based on the foregoing, the District discriminated against her in violation of 42 U.S.C. § 1983 "by subjecting [her] to differential treatment predicated on her age, by routinely favoring other similarly situated employees outside plaintiff's protected class [and] subjecting plaintiff to a hostile work environment." (*Id.* ¶ 67.)

## DISCUSSION

**I.    Motion to Dismiss Standard of Review**

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court should "draw all reasonable inferences in Plaintiff['s] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted). The plausibility standard is guided by two principles. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)); *accord Harris v. Mills*, 572 F.3d 66, 71–72 (2d Cir. 2009).

First, the principle that a court must accept all allegations as true is inapplicable to legal conclusions. Thus, "threadbare recitals of the elements of a cause of action supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Although "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. A plaintiff must provide facts sufficient to allow each named defendant to have a fair

4

understanding of what the plaintiff is complaining about and to know whether there is a legal basis for recovery. *See Twombly*, 550 U.S. at 555.

Second, only complaints that state a "plausible claim for relief" can survive a motion to dismiss. *Iqbal,* 556 U.S. at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but asks for more than a sheer possibility that defendant acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line' between possibility and plausibility of 'entitlement to relief.' " *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556-57) (internal citations omitted); *see In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007). Determining whether a complaint plausibly states a claim for relief is "a context specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679; *accord Harris*, 572 F.3d at 72.

A plaintiff asserting an employment discrimination need not, at the pleading stage, allege facts establishing every element of the now familiar three-stage, burden-shifting *McDonnell Douglas*[1] framework. *Littlejohn v. City of New York*, 795 F.3d 297, 307-08 (2d Cir. 2015). Rather, the facts alleged must give "plausible support" to plaintiff's "minimal" initial burden." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84 (2d Cir. 2015) (quoting *Littlejohn*, 795 F.3d at 307, 312. In other words, the complaint must plausibly allege an adverse employment action and that the employer was motivated by discriminatory intent.

## II. The Motion to Dismiss is Granted

---

[1] *McDonnel Douglas Corp. v. Green*, 411 U.S. 792 (1973).

Section 1983, through its application of the Equal Protection Clause of the Fourteenth Amendment "protect[s] public employees from various forms of discrimination including hostile work environment and disparate treatment." *Demoret v. Zegarelli*, 451 F.3d 140, 149 (2d Cir. 2006). Briante's claims of disparate treatment because of her age and hostile work environment claims will each be addressed in turn.

A. **Disparate Treatment Based on Age**

"The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution is essentially a direction that all persons similarly situated should be treated alike." *Zahra v. Town of Southold*, 48 F.3d 674, 683 (2d Cir. 1995) (internal quotation marks omitted). "To establish . . . intentional or purposeful discrimination, it is axiomatic that a plaintiff must allege that similarly situated persons have been treated differently." *Gagliardi v. Vill. of Pawling*, 18 F.3d 188, 193 (2d Cir. 1994). There must be "a reasonably close resemblance of the facts and circumstances of plaintiffs and comparator's cases." *Ruiz v. County of Rockland*, 609 F.3d 486, 494 (2d Cir. 2010) (quoting *Graham v. Long Island R.R.*, 230 F.3d 34, 40 (2d Cir. 2000)). While the cases need not be identical, "the comparator must be similarly situated to the plaintiff 'in all material respects.' " *Id*. (quoting *Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60, 64 (2d Cir.1997)).

In support of her claim of disparate treatment Briante alleges are as follows: "Mato treated Ms. Mckensey, who is younger than Plaintiff, more favorably than plaintiff." (Comp. at ¶ 28.) "By way of example, rather than assigning Ms. McKensey to her previous area of teaching, Defendant Mato assigned her to teach Math, while plaintiff was now assigned to teach Social Studies and Science." (Comp. at 29). While plaintiff asserts that McKensey was treated more

6

favorably, the only example given does not support that assertion as both plaintiff and Briante were assigned to teach an area different than their previous area of teaching. Whereas Briante had been teaching math, she was assigned to teach science and social studies. Whereas McKensey has been teaching science and social studies, she was assigned to teach math. In other words, both Briante and her comparator were assigned to teach in an subject area different than before.

In addition, the complaint fails to adequately allege "adverse employment actions." "A plaintiff sustains an adverse employment action if he or she endures a materially adverse change in the terms and conditions of employment." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015). "An adverse employment action is one which is more disruptive than a mere inconvenience or an alteration of job responsibilities." *Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003) (internal quotation marks omitted). "[M]aterially adverse changes include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation." *Id.* (internal quotation marks omitted); *see also Vega*, 801 F.3d 85 ("An adverse employment action is one which is more disruptive than a mere inconvenience or an alteration of job responsibilities.") That plaintiff was assigned to teach science and social studies, subjects for which she was certified, over her preferred assignment to teach math does not constitute an adverse employment action. *See Ticali v. Roman Catholic Diocese of Brooklyn*, 41 F. Supp.2d 249, 264 (E.D.N.Y. 1999) (transfer from teaching first grade to teaching pre-kindergarten is not an adverse employment action even though plaintiff had a preference for first grade); *accord Galabya v. N.Y.C. Bd. of Education*, 202 F.3d 636 (2d Cir.

2000) (transfer from teaching special education junior high students to teaching mainstream high school students not an adverse employment action). Nor does the claimed scrutiny and criticism constitute adverse employment actions. *See, e.g., Gutierrez v. City of New York*, 756 F. Supp. 2d 491, 507 (S.D.N.Y. 2010); *Lee v. N.Y.S. Dept. of Health*, 2001 WL 34031217, *16 (S.D.N.Y. Apr. 23, 2001) ("Being yelled at, receiving unfair criticism, receiving unfavorable schedules or work assignments do not rise to the level of adverse employment actions; they do not affect any ultimate employment decisions.") (internal quotation marks omitted).

The motion to dismiss the disparate treatment claim is granted.

**B.      Hostile Work Environment**

To establish a hostile work environment under § 1983 a plaintiff must show that "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys. Inc.*, 510 U.S. 17, 21 (1992). There is both an objective and subjective component to this standard. "[T]he conduct complained of must be severe or pervasive enough that a reasonable person would find it hostile or abusive, and the victim must subjectively perceive the work environment to be abusive." *Raspardo v. Carlone*, 770 F.3d 97, 114 (2d Cir. 2014). Isolated incidents typically do not rise to the level of a hostile work environment unless they are "of sufficient severity" to "alter the terms and conditions of employment as to create such an environment." *Patterson v. County of Oneida*, 375 F.3d 206, 227 (2d Cir. 2004). Generally, "incidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002). In determining whether an incident or series of incidents is sufficiently severe

8

or pervasive, a court "must assess the totality of the circumstances, considering elements such as the frequency of the discriminatory conduct; the severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Raspardo*, 770 F.3d at 114 (internal quotation marks omitted).

Briante's hostile work environment claim is premised on the following allegations: being assigned to teach social studies and science despite her "discomfort" with those subject areas; being assigned a class with "extreme behavioral issues"; Mato wrongfully confronting her about the weight of a student's school bag and accusing her of corporeal punishment; Mato giving her an unsatisfactory evaluation; Mato asking when she was going to retire; and Mr. Marquardt's verbal attack and Mato's failure to intervene.

These allegations are insufficient to support a finding of a hostile work environment that is so severe or pervasive as to have altered Briante's conditions of employment. *See, e.g., Fleming v. Max Mara USA, Inc.*, 371 Fed. Appx. 115, 119 (2d Cir. 2010) (that "defendants wrongly excluded [plaintiff] from meetings, excessively criticized her work, refused to answer work-related questions, arbitrarily imposed duties outside of her responsibilities, threw books and sent rude emails" was insufficient to support claim of a hostile work environment); *Davis-Molinia v. Port Auth. of N.Y. & N.J.*, 2011 WL 4000997, at *11 (S.D.N.Y. Aug. 19, 2011) ("deliberate avoid[ance]", "yell[ing] and talk[ing] down to," and increased workload insufficient to show that defendants created hostile work environment"), *aff'd*, 488 Fed. Appx. 530 (2d Cir. 2012).

In addition, the hostile work environment claim is properly dismissed because plaintiff has failed to allege sufficient facts to support that the conduct giving rise to the alleged hostile

work environment occurred "because of [her] membership in a protected class." *Ventimiglia v. Hustedt Chevrolet*, 2009 WL 803477, at * 6 (E.D.N.Y. Mar, 25, 2009); *accord Rivera v. Rochester Genesee Reg. Transp. Auth.*, 743 F.3d 11, 20 (2d Cir. 2014) ("it is axiomatic that mistreatment at work" is actionable "only when it occurs because of an employee's protected characteristics.") (internal quotation marks omitted); *Alfano v. Costello*, 294 F.3d 365, 377 (2d Cir. 2002) (it is "important in hostile work environment cases to exclude from consideration personnel decisions that lack a linkage or connection to the claimed ground of discrimination;" otherwise a federal court would become "a court of personnel appeals"). Briante's allegations are neutral as to her age. In fact, given her allegation that she was warned that her turning down the request to teach advanced math would result in dire consequences and that that allegation precedes those of the claimed mistreatment, it follows that the alleged conduct may have occurred because of that refusal.

The motion to dismiss the hostile work environment claim is granted.

## CONCLUSION

Defendants' motion to dismiss is granted. The Clerk of Court shall enter judgment accordingly and close this case.

**SO ORDERED.**

Dated: Central Islip, New York
      March 16, 2016                               /s/ Denis R. Hurley
                                                                Denis R. Hurley
                                                                 United States District Judge